[Cite as *In re A.S.*, 2017-Ohio-2849.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: A.S. | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. William B. Hoffman, J.<br>Hon. Earle E. Wise, Jr., J.<br><br>Case No. 2017 AP 01 0004<br><br>O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Tuscarawas County Court of Common Pleas, Juvenile Division Case No. 15 JN 00299 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 17, 2017 |
| APPEARANCES: | |

| For Appellant – Father | For Appellee |
|---|---|
| SHARON BUCKLEY-MIRHAIDARI<br>152 N. Broadway Suite 200<br>New Philadelphia, Ohio 44663 | JEFFREY KIGGANS<br>Tuscarawas County Job & Family Services<br>389 16th St. S.W.<br>New Philadelphia, Ohio 44663 |

| Guardian Ad Litem | For Mother |
|---|---|
| KAREN DUMMERMUTH<br>349 E. High Avenue<br>New Philadelphia, Ohio 44663 | JOHN GARTRELL<br>Assistant Public Defender<br>153 N. Broadway<br>New Philadelphia, Ohio 44663 |

*Hoffman, J.*

**{¶1}** Appellant Richard Searcy ("Father") appeals the December 20, 2016 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated his parental rights with respect to his minor child, and granted permanent custody of the child to Appellee Tuscarawas County Job and Family Services ("TCJFS").

STATEMENT OF THE CASE AND FACTS

**{¶2}** Father and Casey Myers ("Mother")[1] are the biological parents of the minor child (DOB 10/30/12). Mother has a long history of serious drug abuse. Father and Mother were never married.

**{¶3}** The trial court conducted an emergency shelter care hearing on November 16, 2015. Father tested positive for marijuana in a drug screen administered that day. Mother tested negative in her drug screen, but admitted to using methamphetamines two weeks earlier. Following the hearing, the trial court awarded emergency temporary custody of the child to TCJFS. The trial court appointed Attorney Karen Dummermuth as guardian ad litem for the child.

**{¶4}** TCJFS filed a Complaint on November 17, 2015, alleging the child was dependent and/or neglected. The Complaint was filed after Rachel Fetty, a Tuscarawas Court Juvenile Probation Officer, visited the home of Kathy Harding, the child's maternal grandmother, relative to a matter involving one of Mother's other children. Fetty found the home in poor condition. The child was with Mother, who was in rough shape, and

---

[1] Mother is not a party to this Appeal.

admitted to recent methamphetamine use.  Although Mother had custody of the child, the child had been in the physical care of Father.  In September, 2015, Father informed TCJFS he was going to seek custody of the child, but had yet to do so.  Father stated he had left the child with Harding for a weekend visit, and was unaware of Mother's presence at Harding's home.  The Complaint also noted Father's significant criminal history, having previously been a registered sex offender, and his substantial arrearage in child support payments for his other children.

{¶5}   At the adjudicatory hearing on December 16, 2015, Parents stipulated to the Complaint and the trial court found the child to be neglected and dependent.   Harding filed a motion for custody on December 28, 2015.  The trial court conducted a dispositional hearing on January 12, 2016, and approved and adopted Father's case plan, and ordered the status quo be maintained.  Harding's motion was held in abeyance.  Father had a negative drug screen on the day of the dispositional hearing.  The trial court allowed Father to have an additional 1 ½ hours of unsupervised visitation as acceptable to TCJFS.  On February 5, 2016, TCJFS advised the trial court and the parties it was discontinuing Father's unsupervised visitation with the child as the agency had recently learned of a previously undisclosed alleged domestic violence incident between Parents which occurred in October, 2015.

{¶6}   On September 14, 2016, TCJFS filed a Motion to Modify Prior Disposition, seeking permanent custody of the child. The guardian ad litem filed a report on December 2, 2016, recommending the child be placed in the permanent custody of TCJFS. The trial court conducted a hearing on the motion to modify as well as Harding's motion for custody on December 8, 2016.

**{¶7}** The following evidence was adduced at the hearing.

**{¶8}** Rachel Cathey, the TCJFS ongoing case manager originally assigned to the matter, testified the child bounced back and forth between Parents although Father had been instructed to file for legal custody. Cathey detailed Father's case plan which required him to complete a psychological evaluation at Chrysalis Counseling Center and follow all recommendations, complete a diversion program session at Alcohol and Addiction, obtain and maintain stable housing and income, submit to drug screens as requested, and attend monthly meetings with the caseworker. Father completed his psychological evaluation in December, 2015, but, as of early June, 2016, had not followed the recommendations. Father completed the diversion session at Alcohol and Addiction in May, 2016. Father resided with his mother during the time Cathey was assigned to the case. Father's income was sporadic.

**{¶9}** In February, 2016, Cathey learned about an alleged incident between Father and Mother which occurred prior to the filing of the Complaint. Father did not deny the incident happened, but explained Mother had "egged him on" and was "hopped up on drugs". Father stated, as a result, he accidently punched in the window of the vehicle Mother was in. Father hit Mother once in the process of punching out the vehicle window. When Cathey asked Mother about the incident, Mother recalled Father punched in the window of the vehicle and beat her up. Mother presented to the hospital the next day and was told she sustained a fractured jaw and an injury to her nasal cavity. After learning of the incident, TCJFS added anger management to Father's case plan. Father's unsupervised visits with the child were terminated. Cathey noted Father had complied with some of his case plan services, but not the services addressing the major concerns.

{¶10} Barbara Schwartz, a clinical therapist with Chrysalis Counseling Center, testified she conducted a psychological assessment of Father in December, 2015, and January, 2016. The results of Father's testing revealed he did not have the ability to conduct himself in a socially acceptable manner and had issues with substance abuse. Schwartz indicated Father had a personality configuration of Narcissistic Personality Disorder with Antisocial Personality Traits as well as Paranoid Personality Features.

{¶11} Schwartz noted an individual with Narcissistic Personality Disorder displays a lack of empathy, grandiose thinking, arrogance, and an inflated sense of self-worth. Individuals with the disorder are exploitive and manipulative. Schwartz explained narcissistic parents are generally not able to empathize with their children or respond to them appropriately as such parents lack an emotional connection with their children. An individual with Antisocial Personality Traits disregards the rules as well as the rights of others, and has poor impulse control. Schwartz added the prognosis for change in a parent with these personality disorders and traits is not good as the parent does not accept responsibility for his/her actions. Schwartz stated Father needs to participate in an intensive, long-term anger management program to address his issues.

{¶12} Dr. Stephen Dean, a licensed psychologist with Melymbrosia Associates, conducted the psychological assessment of Father. The results of Father's testing revealed he is a man who tends to over-control his emotions, is prone to misinterpret other's statements, infers evil intent from others and feels threatened or attacked, and is fairly isolated with a limited support system. Dr. Dean noted the domestic violence inventory showed Father was elevated on the violence scale, which suggests he is at risk for engaging in violence with others and has significant difficulty regulating his emotions.

Father's testing also demonstrated a significant history of drug abuse. Dr. Dean recommended Father participate in a long term domestic violence treatment program. Father did not participate in the program offered at Melymbrosia. Dr. Dean added the fact Father has twelve children with a number of different women speaks to his inability to maintain relationships. Dr. Dean noted Father lacked understanding of how he contributed to the difficulties in his relationships, opting to blame the women.

**{¶13}** Jaime Grunder replaced Rachel Cathey as the ongoing case manager. She testified she received the file on June 1, 2016. Grunder discussed Father's compliance with his case plan. She stated Father had not started anger management in March, 2016, when it was added to his case plan, but explained TCJFS did not have the funding at that time. In August, 2016, Grunder advised Father the funding was available and he could begin anger management. Father did not commence anger management until December, 2016. Father had obtained housing and was steadily employed. Father had completed one session of Alcohol and Addiction. Father's visits with the child went reasonably well. Father stopped having his cell phone out when Grunder addressed the issue with him.

**{¶14}** Father tested positive for cocaine on June 30, 2016, and August 22, 2016. When discussing the results with Father, Father indicated he thought he would test positive for marijuana in June "because everybody smokes marijuana on their birthday." Father was adamant that he had not used cocaine in August. Grunder did not recommend additional services based on the results of the drug tests as Father denied using cocaine. Father did not attend his monthly meetings with Grunder following the positive drug tests. Grunder made an unannounced visit to Father's home on November 2, 2016. Father

allowed Grunder to inspect the home. Father did not have a room arranged for the child and told Grunder he did not get the bedroom furniture out of storage because she informed him he was not going to get the child back.

{¶15} With respect to relative placement, Grunder explained Kathy Harding was not a viable option as Mother had told Grunder Harding would do whatever to protect her (Mother). Father's sister requested custody, however, she was subsequently arrested and ended up in jail. Father's mother never asked for custody. Grunder stated the child was currently in a foster home and the family wished to adopt her.

{¶16} Via Judgment Entry filed December 20, 2016, the trial court terminated Father's parental rights and granted permanent custody of the child to TCJFS. The trial court found child cannot and should not be placed with Mother or Father within a reasonable time, and it was in the child's best interest to be placed in the permanent custody of TCJFS.

{¶17} It is from this judgment entry Father appeals, raising as his sole assignment of error:

{¶18} I. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS SAID DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶19} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

{¶20} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent

and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶21} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶22} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶23} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including,

but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶24}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶25}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶26}** As set forth in our statement of the facts and case, supra, Father failed to complete all his case plan services. Father was required to complete anger management counseling. Father was evaluated by Dr. Dean in March, 2016. Father claims he was not afforded sufficient time to complete this service as TCJFS lacked funding until August,

2016. However, the record reveals, as the time of the hearing on December 8, 2016, Father still had not commenced the requisite counseling. At the hearing, Father stated he did not think he needed anger management counseling. In addition, Father tested positive for cocaine in July, and August, 2016. TCJFS did not refer Father for drug related services as Father adamantly denied using drugs and told the caseworker the referral would be useless. With respect to the best interest finding, the evidence revealed the child is doing well in foster care and the family is willing to adopt the child. Because Father refuses to address his anger issues and drug use, he will be unable to provide the child with a secure placement.

{¶27} Based upon the foregoing, we find the trial court's awarding permanent custody of the child to TCJFS was not against the manifest weight of the evidence and was supported by clear and convincing evidence.

{¶28} Father's sole assignment of error is overruled.

{¶29} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, J.

Delaney, P.J. and

Wise, Earle, J. concur